**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TAI CICHOCKI,<br>　　　*Plaintiff*,<br><br>　　v.<br><br>SOUTHINGTON EDUCATION<br>ASSOCIATION, *et al.*,<br>　　　*Defendants*. | No. 3:25-cv-1301 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Tai Cichocki ("Plaintiff" or "Ms. Cichocki"), filed an action against the Southington

Board of Education[1] (or "SBE"), Southington Education Association (or "SEA"), and

Connecticut Education Association (or "CEA") (collectively, "Defendants") in the Superior

Court of the State of Connecticut Judicial District of New Britain at New Britain alleging twenty

counts for violations of state and federal law. The Southington Board of Education removed the

case to this Court.

Ms. Cichocki alleges the following Counts against SEA and CEA (collectively, "the

Union"): Count One for prohibited practices and failure to represent under the Teacher

Negotiation Act, Conn. Gen. Stat. § 10-153; Count Two for negligent misrepresentation; Count

Three for promissory estoppel; Count Eleven for breach of fiduciary duty; Count Twelve for

fraud; Count Thirteen for civil conspiracy; Count Fourteen for breach of the duty of fair

representation; Count Sixteen for a violation of Title VII on the basis of gender discrimination,

---

[1] Because this Defendant notes that its "appropriate" legal name is the Southington Board of Education, the Court will use that name rather than the Southington Public Schools. Memorandum of Law in Support of Southington Board of Education's Motion to Dismiss at 1, n.1 ("The Board's appropriate name is the Southington Board of Education, not Southington Public Schools.").

harassment, and retaliation; and Count Nineteen for aiding and abetting in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(5).

Ms. Cichocki alleges the following Counts against the Southington Board of Education: Count Four for prohibited practices under the Teacher Negotiation Act, Conn. Gen. Stat. § 10-153; Count Five for breach of contract; Count Six for breach of the implied covenant of good faith and fair dealing; Count Seven for constructive discharge; Count Eight for intentional infliction of emotional distress; Count Nine for negligent infliction of emotional distress; Count Ten for tortious interference with contractual relations; Count Thirteen for civil conspiracy; Count Fifteen for a violation of Title VII on the basis of gender discrimination, harassment, and retaliation; Count Seventeen for gender discrimination and harassment in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(b)(1); Count Eighteen for retaliation in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(b)(4); and Count Twenty for disability discrimination, failure to accommodate, and forced constructive discharge in violation of the Americans with Disabilities Act.

The Union has filed a motion to dismiss Counts One, Two, Three, Eleven, Twelve, Thirteen, and Fourteen for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); Counts One, Sixteen, and Nineteen for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and Counts One, Two, Three, Eleven, Twelve, Thirteen, and Fourteen for failure to join a necessary party under Federal Rule of Civil Procedure 12(b)(7). The Southington Board of Education moves to dismiss Counts Four, Five, Six, Seven, Eight, Nine, Ten, and Thirteen for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); and Counts Four, Five, Six, Seven, Eight, Nine, Ten, Thirteen, Fifteen, Seventeen, Eighteen, and Twenty under Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, the Defendants' motion to dismiss is **GRANTED.**

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Ms. Cichocki must file an Amended Complaint by **May 1, 2026.** If she chooses to allege her Title VII or ADA claims again as part of any Amended Complaint, she must append the administrative release letter from the Connecticut Commission on Human Rights and Opportunities ("CHRO") in order for her claims to proceed.

If an Amended Complaint is not filed by **May 1, 2026**, Ms. Cichocki's CFEPA, intentional infliction of emotional distress, and negligent infliction of emotional distress claims will be remanded to the Superior Court of the State of Connecticut Judicial District of New Britain at New Britain.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On June 22, 2022, the Southington Board of Education hired Ms. Cichocki as a non-tenured teacher. Notice of Removal, 34-63 ¶ 7, ECF No. 1 ("Am. Compl."). The Union served as the exclusive bargaining representative for the teachers' unit at SBE. *Id.* ¶ 6.

Before the start of the 2023–2024 school year, the Southington Board of Education notified Ms. Cichocki that she would be assigned an additional, sixth class due to staffing shortages. *Id.* ¶ 12. She allegedly would not receive additional compensation for that assignment. *Id.* Ms. Cichocki allegedly raised concerns with both the Union and the Southington Board of Education, asserting that the Collective Bargaining Agreement ("CBA") prohibited the assignment of a sixth class to non-tenured teachers. *Id.* ¶ 13.

When the school year began, only Ms. Cichocki and one other teacher had been assigned to an additional sixth class. *Id.* ¶ 14. Ms. Cichocki allegedly once more brought these concerns to

the attention of the Union and SBE. *Id.* ¶ 15. The Union and the Southington Board of Education

reached an agreement, memorialized in a Memorandum of Understanding ("MOU"), which

allowed Ms. Cichocki and her colleague to leave school earlier at the end of the day in lieu of

additional compensation. *Id.* ¶ 16.

On January 24, 2024, the Southington Board of Education allegedly sent an e-mail to the

entire business department, excluding Ms. Cichocki, offering those employees the opportunity to

earn extra compensation to perform lesson planning and grading duties associated with a sixth

class being taught by a substitute teacher. *Id.* ¶ 17. Ms. Cichocki and her co-workers allegedly

notified the Union of this development and requested the filing of a prohibited practices

grievance. *Id.* ¶ 18. On January 26, 2024, the Union filed the prohibited practices grievance. *Id.*

During February 2024, the Southington Board of Education allegedly continued to assign

the lesson planning and grading duties to Ms. Cichocki's peers despite the Union's directive to

cease and desist from doing so. *Id.* ¶ 19. This allegedly resulted in Ms. Cichocki's peers reacting

negatively towards her, including becoming oppositional, refusing to speak with her, avoiding

her, and being told by the Southington Board of Education administrators to stay away from her.

*Id.* Ms. Cichocki alleges that the blame for their actions was placed on Ms. Cichocki, resulting in

an allegedly hostile and toxic work environment. *Id.*

On February 14, 2024, the Union and the Southington Board of Education entered into a

second MOU regarding the additional job assignments. *Id.* ¶ 20. On February 22, 2024, Ms.

Cichocki was called into a meeting with the Southington Board of Education regarding alleged

complaints made by other employees. *Id.* ¶ 21. On February 26, 2024, the Southington Board of

Education allegedly conducted an unannounced observation of Ms. Cichocki, which would

impact her final rating at the end of the school year. *Id.* Ms. Cichocki alleges that she was not

given an appropriate amount of time to review the evaluation report before being required to meet with SBE to provide any response, as required under Board of Education guidelines. *Id.* ¶ 21. On March 5, 2024, Ms. Cichocki met with the Union and the Southington Board of Education to address her complaints of harassment, hostile work environment, and retaliation. *Id.* ¶ 22.

On March 19, 2024, Ms. Cichocki's mid-year evaluation allegedly indicated that she was progressing toward her end-of-year goals in every area of the evaluation system. *Id.* ¶ 23. The following week, the principal of her school, Mr. Crocco,[2] conducted an informal observation of Ms. Cichocki on a modified school day during SAT testing and subsequently rated her as "developing," which is a below standard designation. *Id.* ¶¶ 24, 83. Ms. Cichocki alleges that she was the only teacher in her department whose evaluation was conducted by Principal Crocco, rather than by the Department Chair in the customary question-and-answer format. *Id.* ¶ 25.

On April 16, 2024, Principal Crocco allegedly requested Ms. Cichocki attend an evaluation. *Id.* ¶ 180. During that meeting, Ms. Cichocki allegedly told Principal Crocco that she felt the actions against her were retaliatory and allegedly stated that the actions were having an adverse effect on her mentally and physically. *Id.* ¶ 182. Principal Crocco allegedly ignored Ms. Cichocki's complaint that work was affecting her mental and physical health and instead stated that "maybe teaching at Southington might not be the best fit for you." *Id.* ¶ 183.

On April 17, 2024, Principal Crocco allegedly issued an unscheduled evaluation of Ms. Cichocki. *Id.* ¶ 157.

On April 19, 2024, Ms. Cichocki allegedly requested the Union's assistance in filing a formal complaint of discrimination and retaliation with the Southington Board of Education's

---

[2] The first name of Mr. Crocco does not appear to be in either the Complaint or the Southington Board of Education's filings.

Human Resources Department. *Id.* ¶ 27. On that same date, the Union allegedly advised Ms. Cichocki that it believed the school system was moving toward issuing her a non-renewal. *Id.* ¶ 27. The Union sent an e-mail to the Southington Board of Education expressing their concerns. *Id.* ¶ 28.

On April 22, 2024, what had originally been scheduled as a "support plan" meeting was allegedly changed by the Southington Board of Education, without advance notice, to a meeting to discuss the 2024–2025 school year. *Id.* ¶ 29. The Union attended the meeting with Ms. Cichocki, which was audio-recorded. *Id.* ¶¶ 29, 156. At the meeting, the Southington Board of Education allegedly notified Ms. Cichocki that her contract would not be renewed. *Id.* ¶ 30. The Southington Board of Education allegedly stated that the reason for the non-renewal was not job performance, but rather Ms. Cichocki's "defensiveness" and failure to "create a positive school environment." *Id.* ¶ 31. At the meeting, the Union allegedly criticized the school system for failing to follow procedure and failing to provide Ms. Cichocki with an improvement plan, as required by Board of Education policies. *Id.* ¶ 30. The Union allegedly stated that the Southington Board of Education had never before issued a member a non-renewal without supporting documentation or supportive measures. *Id.*

Ms. Cichocki alleges that she was not provided with the ten-day period prescribed by the Teacher Negotiation Act ("TNA"), Conn. Gen. Stat. § 10-153e, to contest her April 2024 evaluation, nor the statutory ten-day period to request a hearing before the Board of Education to contest the non-renewal. *Id.* ¶ 32. Instead, Ms. Cichocki alleges she was told she only had three days to request a hearing before the Board. *Id.* ¶ 32.

Ms. Cichocki further alleges that a male teacher who had previously been subjected to a non-renewal and had scored below standard in observations was provided with full support, an

improvement plan, and the statutory ten-day period to contest his observations and non-renewal. *Id.* ¶ 163.

On April 22, 2024, Ms. Cichocki submitted a formal complaint of discrimination, harassment, and retaliation to the Southington Board of Education's Human Resources Department. *Id.* ¶ 162. On the same day, the Union filed a grievance on Ms. Cichocki's behalf seeking that SBE "[c]ease and desist all retaliatory actions against SEA member for engaging with their union and engaging in protected activity." *Id.* ¶ 33. On that same date, the Union allegedly advised Ms. Cichocki that she had two options to contest the non-renewal: the grievance process, which would not be part of the public record, or a hearing before the Board of Education. *Id.* ¶ 34.

Then, the Union allegedly advised and directed Ms. Cichocki to submit her resignation, which would become effective at the end of the school year in June 2024. *Id.* ¶ 35. On April 22, 2024, in reliance on the Union's alleged representations that the grievance process would remain available to her, Ms. Cichocki submitted her resignation. *Id.* ¶ 36.

On the same date and immediately following Ms. Cichocki's submission of her resignation, the Union allegedly withdrew her grievance, characterizing it as moot. *Id.* ¶ 37. Ms. Cichocki was allegedly not informed of this withdrawal until May 1, 2024, when she inquired about the status of her grievance. *Id.* ¶ 38.

Ms. Cichocki thereafter filed a prohibited practices complaint on her own behalf with the State Board of Labor Relations (or "SBLR") against the Southington Board of Education. On October 18, 2024, the Board notified her that it lacked jurisdiction over her complaint because, under the TNA, only the Union had standing to file such a complaint against the Board of Education. *Id.* ¶ 39. On October 21, 2024, Ms. Cichocki allegedly requested that the Union file

the prohibited practices complaint on her behalf with the SBLR. *Id.* ¶ 40. On October 29, 2024, Ms. Cichocki allegedly sent a second e-mail to the Union stating that under the TNA, the Union was required to file a prohibited practice complaint on her behalf. *Id.* ¶ 41.

On October 30, 2024, the Union allegedly declined to file a complaint with the SBLR on her behalf, stating that Ms. Cichocki was no longer a member of SEA or CEA. *Id.* ¶ 42. The Union allegedly took the position that the activities Ms. Cichocki had engaged in did not constitute protected concerted activity, notwithstanding that the Union's own April 22, 2024 grievance had characterized those same activities as protected. *Id.* ¶ 43. The Union allegedly indicated that Ms. Cichocki had forfeited her right to have the Union file a prohibited practices complaint on her behalf when she declined to request a non-renewal hearing. *Id.* ¶ 44.

On November 18, 2024, Ms. Cichocki filed a prohibited practices complaint and a breach of duty of fair representation claim with the SBLR against the Union. *Id.* ¶ 45; Union MTD at 6. The SBLR scheduled an initial preliminary conference to take place on December 18, 2024, but it was later rescheduled with the parties' consent for January 22, 2025. Union MTD at 6. On February 4, 2025, Ms. Cichocki allegedly sent the SBLR a large amount of evidence for the Board's consideration. *Id.* at 7. On February 27, 2025, the SBLR sent Ms. Cichocki notice of the report recommending the dismissal of her claim. *Id.* The report allegedly advised Ms. Cichocki that she had fourteen days to file an objection, after which the SBLR would issue a dismissal of her case. *Id.*

Ms. Cichocki allegedly received service of the report on March 3, 2025, making the deadline for filing an objection March 17, 2025. E-mail from Mr. Santana, ECF No. 23-7. Ms. Cichocki allegedly submitted her objection on March 18, 2025, one day after the objections deadline had passed. *Id.* On March 19, 2025, SBLR agent Mr. Santana informed Ms. Cichocki

8

that because her objection was untimely, the SBLR had closed her case. *Id.* Ms. Cichocki alleges that this March 19, 2025 communication constituted notice of exhaustion of her administrative remedies. Am. Compl. ¶ 45.

### B. Procedural History

On April 17, 2025, Ms. Cichocki filed this lawsuit in the Superior Court of the State of Connecticut Judicial District of New Britain at New Britain.

On May 30, 2025, the Union filed a motion to dismiss in state court. Mot. to Dismiss, ECF No. 7.

On July 14, 2025, the Southington Board of Education filed a motion to dismiss and/or motion to strike in state court. Mot. to Dismiss/Mot. to Strike, ECF No. 8.

On July 21, 2025, Ms. Cichocki filed a response to both motions to dismiss. Resp., ECF No. 9.

On August 4, 2025, the Union filed its reply. Reply, ECF No. 10.

On August 6, 2025, the Southington Board of Education filed its reply. Reply, ECF No. 11.[3]

On August 8, 2025, Ms. Cichocki amended her Complaint to add federal law claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, as well as claims under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 (b). Notice of Removal 34-63, ECF No. 1 ("Am. Compl.").[4]

---

[3] The parties re-filed these motions to dismiss and their corresponding responses and replies in this Court following removal. The later filed motions to dismiss, ECF Nos. 23 and 24, fully encompass the arguments made in the earlier motions, ECF Nos. 7 and 8.

[4] Ms. Cichocki filed the Amended Complaint as part of the notice of removal, instead of as an exhibit or separate docket entry. Therefore, the Court will refer to pages 34-63 of the notice of removal, which contain the Amended Complaint, as such.

On August 14, 2025, the Southington Board of Education removed this action from the Superior Court of the State of Connecticut Judicial District of New Britain at New Britain to the United States District Court for the District of Connecticut under 28 U.S.C. § 1441. Notice of Removal, ECF No. 1.

On September 19, 2025, the Union filed a motion to dismiss. Mot. to Dismiss, ECF No. 23 ("Union MTD").

On September 19, 2025, the Southington Board of Education filed a motion to dismiss. Mot. to Dismiss, ECF No. 24 ("SBE MTD").

On October 10, 2025, Ms. Cichocki filed a memorandum in opposition to both motions to dismiss. Mem. in Opp., ECF No. 27 ("Mem. in Opp.").

On November 3, 2025, both the Union and SBE filed replies. Reply, ECF No. 30 ("SBE Reply"); Reply, ECF No. 31 ("Union Reply").

## II.    STANDARD OF REVIEW

### A.  12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing subject matter jurisdiction over the claims by a preponderance of the evidence. Id.

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the Complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter

jurisdiction, we review factual findings for clear error and legal conclusions de novo . . . Moreover the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

### B.  12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Ms. Cichocki alleges that the Southington Board of Education and the Union engaged in practices prohibited by the Teacher Negotiation Act ("TNA"), Conn. Gen. Stat. § 10-153e, et seq. Am. Compl. ¶¶ 8-9. Specifically, Ms. Cichocki alleges that the Southington Board of Education impermissibly retaliated against her for having engaged in protected activities, and the Union breached its duty of fair representation. *Id.*

The Defendants argue that this Court lacks subject matter jurisdiction over several of Ms. Cichocki's claims because she failed to exhaust her administrative remedies, and that she has failed to state a claim upon which relief may be granted for the remaining claims.

The Court discusses each of the Defendants' arguments in turn.

### A. Exhaustion of Administrative Remedies

"When presented with motions to dismiss on both 12(b)(l) and 12(b)(6) grounds, a court must first decide the 12(b)(l) motion as defenses and objections are moot if the court does not have subject matter jurisdiction over the complaint." *Abrahams v. Appellate Div. of Supreme Court,* 473 F. Supp. 2d 550, 554 (S.D.N.Y. 2007) (citing *Rhulen Agency, Inc . v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 675 (2d Cir. 1990)).

Under the Teacher Negotiation Act, a board of education is prohibited from:

> (1) Interfering, restraining or coercing certified professional employees in the exercise of the rights guaranteed in sections 10-153a to 10-153n; (2) dominating or interfering with the formation, existence or administration of any employees' bargaining agent or representative; (3) discharging or otherwise discriminating against or for any certified professional employee because such employee has signed or filed any affidavit, petition or complaint under said sections; (4) refusing to negotiate in good faith with the employees' bargaining agent or representative which has been designated or elected as the exclusive representative in an appropriate unit in accordance with the provisions of said sections; or (5) refusing to participate in good faith in mediation or arbitration . . .

Conn. Gen. Stat. § 10-153e(b). If an employee believes a board of education engaged in one of these prohibited practices, the employee must seek the help of its union, who has the authority to file a prohibited practices complaint against the board. Conn. Agencies Regs. § 10-153e-9. The employee's union has a duty to fairly represent the employee in these grievance procedures. *See* Conn. Gen. Stat. § 10-153e(c).

The Connecticut legislature codified the union's duty within the same statute by prohibiting an employee's representative organization from "breaching its duty of fair representation pursuant to section 10-153a" and "refusing to negotiate in good faith with the employing board of education . . ." Conn. Gen. Stat. § 10-153e(c). "To prove that the union breached its duty of fair representation, Connecticut General Statute § 10-153e requires that the employee . . . file a written complaint with the SBLR . . ." *Sweeney v. Enfield Bd. of Ed.*, No. 3:14-CV-01511 (MPS), 2015 WL 4722969, at *4 (D. Conn. Aug. 10, 2015); Conn. Gen. Stat. § 10-153e(e). And the SBLR has exclusive jurisdiction over claims of a breach of a union's statutory duty of fair representation, including "hybrid" actions in which an employee alleges both that the employer breached the collective bargaining agreement, and that the union breached the duty of fair representation. *Piteau v. Board of Education of City of Hartford*, 15 A.3d 1067, 1082-83 (Conn. 2011).[5] A final decision by the SBLR is then subject to appeal to the Connecticut Superior Court. *Id.* A "final decision" is defined by statute as "(A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176, or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration." Conn. Gen. Stat. § 4-166(5). A "contested case" is defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required

---

[5] *Piteau* concerned the Municipal Employees Relations Act, which is the municipal counterpart to the TNA. Courts since have recognized that the TNA possesses the same exhaustion requirements as the Municipal Employees Relations Act, as decided by the Connecticut Supreme Court in *Piteau*, 15 A.3d 1067. *See, e.g., Valenzisi v. Connecticut Education Association,* FSTCV095013081S, 2012 WL 5278593 (Conn. Super. Ct. Oct. 4, 2012) (recognizing as the Connecticut Supreme Court did in *Piteau* that "the legislature had intended to vest sole jurisdiction for claims alleging a breach of the duty of 'fair representation' with the state board of labor relations, subject only to the right of any party to take an administrative appeal to the Superior Court from a decision of the state board of labor relations.").

by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact, held . . ." Conn. Gen. Stat. § 4-166(4).

The Defendants argue that this Court lacks subject matter jurisdiction over Counts One through Fourteen alleging a breach of the duty of fair representation and related common law claims, because Ms. Cichocki failed to exhaust her administrative remedies with the State Board of Labor Relations ("SBLR") before filing suit in Connecticut Superior Court. Union MTD at 12-14; SBE MTD at 13-15.

In response, Ms. Cichocki argues that the SBLR failed to timely adjudicate her complaint there. Mem. in Opp. at 4-5. In her view, even though she failed to obtain a final decision from the SBLR, exhaustion should be excused in her case because she was "obstructed . . . by collusion and bad faith," thereby rendering exhaustion inadequate and futile. *Id.* at 6. Specifically, she argues that under United States Supreme Court precedent, "the employee's obligation to exhaust the grievance procedure depends on the union's duty to represent her fairly." *Id.* at 7-8 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)). She also argues that SBLR's failure to comply with statutory deadlines rendered that forum inadequate. *Id.* at 8.

In reply, the Southington Board of Education argues that all of the cases Ms. Cichocki cites do not support her contention that exhaustion was not required in her case. SBE Reply at 1. In its view, even if "the Union did act in bad faith, [Ms. Cichocki] was still required to bring a claim against the Union with the Labor Board, not the trial court." *Id.* at 3. And Ms. Cichocki failed to object to SBLR's proposed dismissal of her case before the deadline, thereby "missing her chance to exhaust her administrative remedies." *Id.* at 3-4.[6]

---

[6] SBE also argues that specifically Counts Five and Six should be dismissed for failure to exhaust the administrative remedies not only provided by an SBLR claim, but also under the four-step grievance procedure in the CBA. Reply at 4-5.

The Union further argues that the SBLR responded to Ms. Cichocki's Complaint only seven days after the ninety-day window in which the SBLR was statutorily directed, not mandated, to issue a recommendation had lapsed. Union Reply at 1-2. In its view, the SBLR thus was not "90 days late," *id.*, and the SBLR's alleged failure to strictly abide by this deadline does not render that forum's remedies "inadequate," *id.* at 2. Finally, the Union argues that because Ms. Cichocki failed to file an objection to the recommended dismissal, SBLR was required, by statute, to refrain from holding a hearing on the merits and issuing a final order or decision. Thus, the Union argues that the exhaustion requirement is not excusable, and this Court lacks jurisdiction over Ms. Cichocki's claims under the TNA.

The Court agrees.

"The Connecticut Supreme Court has recognized on multiple occasions that an aggrieved party must exhaust its administrative remedies before it may seek judicial relief." *Holt v. Town of Stonington*, 765 F.3d 127, 132 (2d Cir. 2014) (quoting *Fairchild Heights Residents Ass'n v. Fairchild Heights, Inc.*, 310 Conn. 797, 810 (2014)). "It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Hunt v. Prior*, 236 Conn. 421, 431 (1996); *see Sweeney*, 2015 WL 4722969, at *5.

On November 18, 2024, Ms. Cichocki filed a complaint with the SBLR stating that the Union Defendants breached their duty of fair representation by allegedly coercing her to resign, failing to pursue her grievance after her resignation, and deciding not to pursue her prohibited practices complaint with the SBLR. Union MTD at 6.

16

On February 27, 2025, the SBLR notified Ms. Cichocki by mail of its report and recommendation dismissing her claim. *Id.* at 7. The notice allegedly informed Ms. Cichocki of the fourteen-day window within which to file an objection to the recommendation, after which SBLR would issue a dismissal. *Id.*; Conn. Gen. Stat. § 10-153e-14. Ms. Cichocki allegedly failed to file an objection, and her case was dismissed. *Id.*

Had Ms. Cichocki filed an objection, the SBLR would have been required to hold a hearing. Conn. Gen. Stat. § 10-153e-14 ("If any such party files a written objection to the Agent's recommendation of dismissal within fourteen (14) days of its service upon him, the Board shall order a hearing to be held upon the complaint[.]"). And if after her hearing, she remained "aggrieved by a final order of the Board of Labor Relations" she would have had the ability to "appeal . . . to the superior court for the judicial district where the prohibited practice was alleged to have occurred . . ." Conn. Gen. Stat. § 10-153e(g)(4).

Because Ms. Cichocki failed to object to the recommended dismissal, which would trigger the required hearing, she lacks the appealable final decision necessary to confer subject matter jurisdiction upon this court. As to her exhaustion argument, the doctrine of administrative exhaustion is subject to "narrow" and "infrequent" exceptions, namely when recourse to the administrative remedy would be futile or inadequate. *Piteau*, 15 A.3d at 1080. For example, an administrative remedy is "futile or inadequate if the agency is without authority to grant the requested relief" or if seeking the remedy "could not result in a favorable decision and invariably would result in further judicial proceedings." *Id.* (citing *Neiman v. Yale University,* 851 A.2d 1165, 1174 (Conn. 2004)). But "utilizing administrative remedies is not futile for purposes of the futility exception even when the decision maker has indicated that it will rule against the

17

grievant." *Neiman*, 851 A.2d at 1174 (citing *Housing Authority v. Papandrea,* 610 A.2d 637 (1992)).

Ms. Cichocki claims the SBLR's remedies were futile and inadequate for three reasons. First, she argues that the Union's breach of its duty of fair representation frustrated the grievance process, relying on *Vaca v. Sipes*, in which the United States Supreme Court identified instances in which an "employee should not be limited to the exclusive remedial procedures established by the contract" with his or her employer for a claim brought under the National Labor Relations Board. 386 U.S. at 184-85.

For example, "when the conduct of the employer amounts to a repudiation of [the] contractual [grievance] procedures . . . the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* Another circumstance in which an employee may seek judicial enforcement of his contractual rights is where "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Id.* The Court's rationale for these exceptions was that "these contractual remedies have been devised and are often controlled by the union and the employer" and there "may well prove unsatisfactory or unworkable for the individual grievant." *Id.* at 185.

Under the TNA, the SBLR has exclusive jurisdiction over a complaint from an employee's collective bargaining representative alleging a prohibited practice against a board of education, Conn. Gen. Stat. §§ 10-153e(e), 10-153e(b)(1), and a complaint from an employee alleging breach of the duty of fair representation against his or her collective bargaining representative, *id.* § 10-153e(e). Ms. Cichocki filed the latter against the Union, but failed to

18

exhaust the available grievance procedures. She now relies on *Vaca* to argue that the Union's alleged frustration of her administrative grievance procedure should excuse her from administratively exhausting her claim against it.

*Vaca* was decided under the National Labor Relations Act, while this case is governed by the Teacher Negotiation Act. These statutory schemes have one dispositive difference. The *Vaca* Court was concerned with the lack of judicial review under the NLRA, which gave the general counsel of the National Labor Relations Board unreviewable discretion to refuse an unfair labor practice complaint. 386 U.S. at 186. Under the TNA, however, if a union refuses to file a prohibited practices complaint on behalf of the employee, the statute provides the employee with recourse, namely a claim against the union for a breach of the duty of fair representation. If properly exhausted, an employee may appeal a final unfavorable decision to state court. For this reason, the Connecticut Supreme Court in *Piteau* declined to follow *Vaca* on state law claims and recognized the SBLR's exclusive jurisdiction over claims against either a board of education or a union sounding in the TNA. 15 A.3d at 1082-83. Thus, the Supreme Court's reasoning in *Vaca* does not render the SBLR grievance procedures inadequate or futile.

Second, Ms. Cichocki argues that the statutory remedy requiring the Union to file a written complaint to the SBLR "proved illusory" since the Union refused to file the complaint once she was no longer a member. Mem. in Opp. at 8. But this argument ignores Ms. Cichocki's own power, and responsibility, under the TNA to preserve her complaints against the Southington Board of Education by filing a complaint against the Union for breach of the duty of fair representation. *See Saccardi v. Bd. of Educ. of the City of Stamford*, 697 A.2d 716, 720 (Conn. 1997) ("Where the collective bargaining agreement permits only the union to take a grievance to arbitration, the employee has no further remedy unless he can prove that the union

19

breached its duty of fair representation by acting arbitrarily, maliciously, or in bad faith." (citing *Vaca,* 386 U.S. at 186)). Ms. Cichocki remains able to avail herself of the forum, albeit through a different avenue. The Union's alleged refusal to pursue a complaint against SBE on her behalf does not render the SBLR inadequate as a forum to adjudicate the relief sought.

Third, Ms. Cichocki argues that the SBLR's failure to timely respond to her complaint "rendered that forum inadequate." Mem. in Opp. at 8. Ms. Cichocki has not shown how the SBLR's seven-day delay in issuing its recommendation deprived the SBLR of its ability to grant Ms. Cichocki the ultimate relief she seeks. *See Piteau*, 15 A.3d at 1080-81 (finding that the SBLR possesses the authority to grant back pay, costs and attorney's fees (collecting cases)). Nor has she alleged that the SBLR's delay caused her undue prejudice in pursuing her claim. Thus, Ms. Cichocki has not shown that exhaustion of administrative remedies should be excused in her case.

Having concluded that Ms. Cichocki's failure to exhaust her administrative remedies deprives this Court of subject matter jurisdiction, the Court must now determine which of her claims must be dismissed. Undoubtedly, Counts One, Four, and Fourteen, which allege violations of the TNA, must be dismissed.[7] The issue is whether Ms. Cichocki's remaining state statutory and common law claims are "derivative" of her TNA claims and therefore must also be dismissed.

The Court begins with the remaining state common law claims asserted against the Union defendants. Counts Two, Three, Eleven, Twelve, and Thirteen contain claims for negligent

---

[7] Count Fourteen alleges a breach of the common law duty of good faith representation. Courts have found the common law duty to be encompassed within the statutory responsibility articulated in the TNA. *See Piteau*, 15 A.3d at 1078 (recognizing that Connecticut law "both codified the duty of fair representation and vested the board of labor relations with exclusive jurisdiction over claims of a breach of that duty, even when such claims are brought in the context of a hybrid action, subject to a right of appeal to the Superior Court from an adverse final decision of that board.").

misrepresentation, promissory estoppel, breach of fiduciary duty, fraud, and civil conspiracy, respectively. All of these Counts are based on the same facts underlying Ms. Cichocki's TNA claims, and they all allege that the Union's conduct violated its duty to represent Ms. Cichocki under the TNA. *See* Am. Compl. ¶¶ 54-63 (alleging that the Union negligently misrepresented facts in violation of its "duty to [Ms.] Cichocki to exercise reasonable care in providing her with accurate information about her rights and options."); *id.* ¶¶ 66-75 (alleging that the Union made false promises and representations to Ms. Cichocki in the course of pursuing her grievance against SBE); *id.* ¶¶ 130-132 (alleging that the Union breached its "fiduciary duty . . . to act with the utmost good faith and loyalty" towards Ms. Cichocki"); *id.* ¶¶ 137-140 (alleging that the Union knowingly made false representations to Ms. Cichocki, on which she detrimentally relied); *id.* ¶¶ 137-140 (alleging the Union and SBE conspired to "retaliate[] against [Ms.] Cichocki for engaging in protected concerted activities and depriving her of her statutory and contractual rights").

Because Counts Two, Three, Eleven, Twelve, and Thirteen are derivative of Counts One and Fourteen, they are subject to administrative exhaustion requirements. *See, e.g., Valenzisi v. Connecticut Educ. Ass'n*, No. FSTCV095013081S, 2012 WL 5278593, at *3 (Conn. Super. Ct. Oct. 4, 2012), *aff'd,* 90 A.3d 324 (Conn. 2014) ("The March 26, 2012 complaint purports to allege four separate causes of action. However, each of the causes of action is based on the alleged breach of essentially the same duties owed by the defendant to the plaintiff as his collective bargaining representative. Their duties are all within the scope of General Statutes §§ 10–153e(c)(3) and § 10–153e(e).").

Next, the Court considers the bulk of the state common law claims asserted against the Southington Board of Education. Counts Five, Six, Seven, Ten, and Thirteen contain claims for

21

breach of contract, breach of the implied covenant of good faith and fair dealing, constructive discharge, tortious interference with contractual relations, and civil conspiracy, respectively. [8] Many of these Counts allege that the Southington Board of Education acted in violation of Ms. Cichocki's rights under the TNA. *See* Am. Compl. ¶¶ 102-104 (alleging that SBE "engag[ed] in a pattern of retaliatory conduct against [Ms.] Cichocki for exercising her rights under the [CBA] and the [TNA]"); *id.* ¶¶ 107-110 (alleging SBE subjected Ms. Cichocki to "intolerable conditions" that forced her to resign); *id.* ¶¶ 124-128 (alleging that SBE interfered with Ms. Cichocki's contractual relationship with the Union "that led to the Union's withdrawal of [Ms.] Cichocki's grievance");  *id.* ¶¶ 137-140 (alleging the Union and SBE conspired to "retaliate[] against [Ms.] Cichocki for engaging in protected concerted activities and depriving her of her statutory and contractual rights"). Here, too, Counts Six, Seven, Ten, and Thirteen are derivative of Count Four and are therefore subject to dismissal.

Count Five, which alleges a breach of the collective bargaining agreement, requires a slightly different analysis. Ms. Cichocki alleges that she was employed under the terms of the CBA between the Southington Board of Education and the Union, which specifically stated that non-tenured teachers could not be assigned a sixth class. Am. Compl. ¶¶ 95-96. In Count Five, she alleges that the Southington Board of Education breached the CBA by assigning her a sixth class without proper compensation, and later breached the CBA and subsequent MOUs by offering compensation to other teachers for similar work without offering that option to her. *Id.* ¶¶ 97-98.

"[I]t is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration

---

[8] Because Counts Eight and Nine against the Southington Board of Education are arguably outside of the scope of administrative exhaustion, the Court addresses them below rather than here.

procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union." *Sweeney*, 2015 WL 4722969, at *4 (quoting *Saccardi*, 697 A.2d at 718). The CBA allegedly provides a four-step grievance process to address disputes regarding the terms and conditions of the contract. At level one, either the employee or the union may request a meeting with the Principal or the employer's immediate supervisor. At level two, either the employee or the union may request a meeting with the Superintendent. At level three, only the union may submit a request to meet with the Board.[9] At level four, only the union may submit a request for arbitration of the grievance. *See* SBE MTD at 4.

On April 19, 2024, Ms. Cichocki allegedly requested the Union's assistance in filing a formal complaint of discrimination and retaliation with SBE's Human Resources Department. Am. Compl. ¶ 27. Then, on April 22, 2024, she "submitted a formal complaint of discrimination, harassment and retaliation to [SBE's] Human Resources." *Id.* ¶ 162. On that same day, the Union allegedly gave Ms. Cichocki two options to contest her non-renewal, a "grievance" or a "hearing in front of the board" before she was allegedly coerced to resign, although it is unclear whether either of these options relates to the CBA's grievance procedure. *Id.* ¶ 34. Thus, Ms. Cichocki has sufficiently alleged that she "at least attempt[ed]" to exhaust the CBA's grievance procedures. Nonetheless, her ultimate remedy still lies with the SBLR.

The SBLR has exclusive jurisdiction over breach of contract claims that are "predicated entirely on [the] claim that the unions breached their duty of fair representation in processing [an employee's] grievance against the board of education." *Piteau*, 15 A.3d at 1083. Count Five of Ms. Cichocki's claim, on the other hand, alleges facts independent of the Union's alleged breach of its duty of fair representation. In other words, Count Five is a "pure" breach of contract claim

---

[9] Seeing as none of the parties have submitted a copy of the CBA to this Court, it is unclear to the Court whether "Board" here refers to the Board of Education or the SBLR.

over which the SBLR declines to exercise jurisdiction. *Id.* at 1082 (recognizing that the SBLR declines to exercise jurisdiction over stand-alone breach of contract claims (collecting cases)).

But if an employee alleges that he was unable to exhaust the contractual grievance procedures because the CBA only allows the union to pursue the final steps, "the employee has no further remedy unless he can prove that the union breached its duty of fair representation by acting arbitrarily, maliciously, or in bad faith." *Saccardi*, 697 A.2d at 720-21; *see also Tedesco v. City of Stamford*, 222 Conn. 233, 248, 610 A.2d 574, 581 (1992) ("If a union fails to submit a meritorious grievance to arbitration, an employee may sue the union for breach of its duty of fair representation."). Ms. Cichocki did not fully exhaust her claim according to the terms of her CBA, and any claim that her Union frustrated her ability to do so belongs with the SBLR. This Court therefore lacks subject matter jurisdiction to hear her breach of contract claim.

Accordingly, the Defendants' motion to dismiss Counts One through Fourteen of the Plaintiff's Amended Complaint will be granted.

### B.  The Remaining Claims

The Defendants have moved to dismiss the remaining Counts Fifteen through Twenty under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Counts Fifteen, Sixteen, and Twenty allege violations of Title VII and the Americans with Disabilities Act; Counts Eight and Nine allege intentional and negligent infliction of emotional distress; and Counts Seventeen, Eighteen, and Nineteen allege violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b).

The Court discusses each in turn.

24

### 1. The Federal Law Claims

Count Fifteen alleges gender discrimination, harassment, and retaliation against the Southington Board of Education in violation of Title VII, and Count Sixteen alleges the same against the Union. Count Twenty alleges disability discrimination, failure to accommodate, and forced constructive discharge against the school system in violation of the Americans with Disabilities Act ("ADA").

The Defendants present various arguments as to why these claims must be dismissed, and Ms. Cichocki responds to each. But the Court finds, once more, that it must dismiss her federal law claims because of Ms. Cichocki's failure to exhaust administrative remedies.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) ("Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'") (*quoting Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("Exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme." (cleaned up)).

Similarly, "[t]he ADA requires that a plaintiff exhaust all available administrative remedies before filing an employment discrimination action." *Kelly v. N. Shore–Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016); *see also McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138–39 (2d Cir. 2007) (confirming that Title I of the ADA, which concerns employment protections, requires administrative exhaustion).

25

Ms. Cichocki first raised her Title VII and ADA claims when she amended her Complaint in state court. But nowhere in her Amended Complaint does she assert that she submitted a complaint alleging discrimination on the basis of her gender or disability to the Equal Employment Opportunity Commission ("EEOC") or the equivalent state agency. Nor did her initial complaint to the SBLR allege any gender-based or disability-based discrimination. *See* Complaint Statement, ECF No. 23-5.

In his declaration, SEA President Jason Ghidini stated that "[o]n or about February 12, 2025, Ms. Cichocki filed a complaint against SEA with the CHRO and the EEOC." Decl. of Jason Ghidini 2, ECF No. 23-2. According to Mr. Ghidini, "[t]he CHRO dismissed the complaint on or about June 10, 2025, because Ms. Cichocki failed to state a claim that the SEA's conduct was discriminatory." *Id.* Although Ms. Cichocki may have filed a complaint with the CHRO, as Mr. Ghidini states, she has neither alleged the subject matter of her complaint nor has she alleged that she received a release of jurisdiction letter allowing her suit to proceed in federal court. *See Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) ("It is undisputed that CFEPA claims must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction."). Thus, Ms. Cichocki has failed to allege that she exhausted her administrative remedies.

Accordingly, the Defendants' motion to dismiss Counts Fifteen, Sixteen, and Twenty of Ms. Cichocki's Amended Complaint will be granted.

### 2. The Remaining State Law Claims

Counts Seventeen and Eighteen allege gender discrimination and retaliation against SBE in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b). Count Nineteen alleges aiding and abetting against the Union, also in violation of the

CFEPA. Count Eight alleges intentional infliction of emotional distress, and Count Nine alleges negligent infliction of emotional distress.

Because the Court has dismissed all of Ms. Cichocki's federal law claims for failure to state a claim, the Court lacks subject matter jurisdiction over her CFEPA claims, as well as her claims for intentional infliction of emotional distress and negligent infliction of emotional distress. *See* Am. Compl. ¶ 2-5 (alleging that the Plaintiff and all Defendants are residents of Connecticut); *see also* 28 U.S.C. §§ 1331, 1332, 1367; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage[.]"); *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("A district court's decision whether to exercise jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. But . . . when a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (cleaned up).

Accordingly, the Defendants' motion to dismiss Counts Eight, Nine, Seventeen, Eighteen, and Nineteen will be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is **GRANTED.**

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Ms. Cichocki must file an Amended Complaint by **May 1, 2026.** If she chooses to allege her Title VII or ADA claims again as part of any Amended Complaint, she must append the administrative release letter from the Connecticut Commission on Human Rights and Opportunities ("CHRO") in order for her claims to proceed.

If an Amended Complaint is not filed by **May 1, 2026**, Ms. Cichocki's CFEPA, intentional infliction of emotional distress, and negligent infliction of emotional distress claims will be remanded to the Superior Court of the State of Connecticut Judicial District of New Britain at New Britain.

**SO ORDERED** at New Haven, Connecticut, this 30th day of March, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE